UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUDDEN SERVICE, INC.,

        Plaintiff,

v.

        CIVIL CASE NO. 06-15649
        HON. MARIANNE O. BATTANI

BROCKMAN FORKLIFTS, INC., and
EDWARD W. BROCKMAN, individually,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Before the Court is Defendant's Motion for Partial Summary Judgment (Doc. #63) and Plaintiff's Motion for Summary Judgment (Doc. # 64). Both parties argue that summary judgment is appropriate with regard to Plaintiff's claims of breach of contract, fraudulent transfer/improper distribution, and assorted tort claims arising from the breach of contract claim.

Because the claims of conversion, silent fraud, and unjust enrichment against Defendants are not distinct from the breach of contract claim, Defendant's Motion for Partial Summary Judgment is **GRANTED** as to those claims. Because the claims for breach of fiduciary duty and wrongful dissolution are without merit, Defendant's Motion for Partial Summary Judgment is **GRANTED** as to those claims. Because the breach of contract claim is undisputed, Plaintiff's Motion for Summary Judgment is **GRANTED** as to that claim. Finally, because the evidence

1

does not establish a fraudulent transfer or an improper distribution, Defendant's Motion for Partial Summary Judgment is **GRANTED** as to those claims.

II.     STATEMENT OF FACTS

Plaintiff Sudden Services International (a machine parts dealer) and Defendants Brockman Forklifts International ("BFI", a forklift dealer) and Edward W. Brockman ("Brockman", the president and sole shareholder of BFI) had a longstanding business relationship. Under a 1991 sales agreement between Plaintiff and BFI, BFI had an open account to order forklift parts and Plaintiff would add the cost of the parts to BFI's account, with the bill payable monthly.

BFI began having trouble paying its creditors (particularly Bank One and other lenders) in 2001. Between 2001 and 2003, Brockman, the sole shareholder, contributed approximately $447,000 in various payments to BFI. In June 2003, after these payments were made, Brockman executed a loan agreement and security interest with BFI, establishing that these prior payments were loans, and that Brockman was a secured creditor of BFI.[1] There is no evidence that BFI ever paid Brockman the $6,000 per month as required under the terms of the note, and the loan agreement contains no maturity date.

In March 2005, BFI ceased paying Plaintiff's bill, and Plaintiff sent BFI demand letters in May, June and September of 2005 for payment of the approximately $104,000 owed to Plaintiff. Shortly thereafter, BFI entered into dissolution. Between March 2005 and June 2005,

---

[1] Defendants provided a draft promissory note and a security agreement for the loan, as Defendants allege that the signed promissory note was destroyed due to water damage.

four payments totaling approximately $145,000 were made to Brockman by BFI, and approximately $254,000[2] worth of BFI's physical assets (the remaining forklift fleet) were transferred to Brockman. BFI and Brockman justify the transfers as payments towards Brockman's loan.

Plaintiff filed a complaint in December 2006, the complaint was subsequently amended three times, and the current iteration claims the following: (1) breach of contract (against BFI)[3], (2) statutory and common law conversion (against both defendants), (3) unjust enrichment (both Defendants), (4) silent fraud (Brockman), (5) fraudulent transfer (both Defendants)[4], (6) distribution in violation of the Michigan Business Corporation Act (Brockman), (7) wrongful dissolution (BFI), and (8) breach of fiduciary duty (Brockman).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with

---

[2] Plaintiff claims that this figure is undervalued, as Defendant Brockman soon sold half of the remaining viable forklifts for $280,000.

[3] Plaintiff also alleges "Action on Account Stated" as Count II, which charges Defendant with refusing to settle its account with Plaintiff. This is a doctrine used in breach of contract claims, and not a separate cause of action. R. G. Moeller Co. v. Van Kampen Const., 225 N.W.2d 742, 744 (Mich. Ct. App. 1975).

[4] Plaintiff further alleges "Piercing the Corporate Veil" as Count X, with regard to Defendant Brockman's allegedly fraudulent transfers. Similar to the previous footnote, veil-piercing is a doctrine allowing recovery of damages from a corporation's shareholder, and not a cause of action. Klager v. Robert Meyer, 329 N.W.2d 721 (Mich. 1982).

3

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Accordingly, in the instant case, this Court evaluates the motions with the rule that it should defer to the opposing parties' factual account whenever that account clashes with the movant's. The Court must keep in mind, however, that the opposing party "may not rest upon the mere allegations or denials of [his] pleading, but... must set forth specific facts showing that there is a genuine issue for trial" Anderson, 477 U.S. at 248 (internal quotations and citation omitted).

## IV. ANALYSIS

*1. Breach of Contract*

As a preliminary matter, both parties agree that Defendant BFI breached the sales contract with Plaintiff when it refused to pay for the final shipments of parts, and Defendant BFI is liable for the damages therefrom (approximately $104,000). As such, the Court will grant summary judgment in favor of Plaintiff on this claim.

*2. Conversion, Unjust Enrichment and Silent Fraud*

4

"[T]he law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." Brock v. Consolidated Biomedical Labs, 817 F.2d 24, 25 (6th Cir.1987) (citing Haas v. Montgomery Ward & Co., 812 F.2d 1015 (6th Cir.1987)). Where a plaintiff's cause of action arises from the breach of a contractual obligation, the appropriate claim is in contract, not tort. Brewster v. Martin Marietta Aluminum Sales, Inc., 378 N.W.2d 558 (Mich. App. 1985). In Brewster, the Court held that the plaintiff's cause of action was in contract, not in tort because "[a] relationship did not exist ... which would give rise to a legal duty without enforcement of the contract promise itself." Brewster, 378 N.W.2d at 569. See also Hart v. Ludwig, 347 Mich. 559, 565, 79 N.W.2d 895 (1956) ("if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not").

The tort of conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." Foremost Ins. Co. v. Allstate Ins. Co., 486 N.W.2d 600, 606 (Mich. 1992). Statutory conversion, by contrast, consists of knowingly "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." MICH. COMP. LAWS § 600.2919(a). Plaintiff's primary argument is that Defendant Brockman's receipt of the money with the intent to not pay Plaintiff establishes the conversion claims.

To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care. Check Reporting Services, Inc. v. Michigan Nat'l Bank-Lansing, 478 N.W.2d 893, 900 (Mich. Ct. App. 1991). It is clear that when the dispute is over moneys owed, conversion is only applicable in cases involving money that is the property

of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully taken.  See Trail Clinic, PC v. Bloch, 319 N.W.2d 638 (Mich. Ct. App. 1982) (allowing a conversion claim when one party appropriated checks payable to another party); Rennie v. Pentagon Refining Co., 273 N.W. 325 (Mich. 1937) (conversion found where one party appropriated funds from another party's brokerage account).  Here, the facts do not support the claim of conversion with regards to either the breach of contract or the transfer of funds and assets.  Plaintiff did not entrust specific moneys to the care of Defendant; instead, Plaintiff and Defendant engaged in the sale and purchase of goods according to an express contract.  Because Plaintiff's cause of action arises from the breach of the contract (and not the appropriation of specific funds in violation of a separate legal duty), Plaintiff's conversion claim fails.

Similarly, the unjust enrichment claim must be dismissed.  Under Michigan law, if a plaintiff establishes the receipt of a benefit and a resulting inequity, then "the law will imply a contract in order to prevent unjust enrichment." Belle Isle Grill Corporation v. City of Detroit, 666 N.W.2d 271, 280 (Mich.App.2003) (internal citations omitted).  "However, a contract will be implied only if there is no express contract covering the same subject matter." Id.  Because there is an express contract in the case at hand, there can be no unjust enrichment, and summary judgment is granted on this count.

Finally, Plaintiff's claims for silent fraud similarly fail.  Plaintiff's entire argument surrounding the silent fraud is that Defendants had a contractual duty to disclose their financial state to Plaintiff.  This duty, however, arises out of the contract that is the subject of the breach of contract claim.  Similarly, the damage done by the alleged non-disclosure is simply the monetary damage from Plaintiff's breach of the contract.  Because this claim involves no legal

6

duty separate from the contract, summary judgment on the silent fraud claim is granted. See Hart, 347 Mich. at 565.

*3. Fraudulent Transfer/Improper Distribution*

Plaintiff contends that Brockman's payments to BFI were equity contributions to keep the business from defaulting and exposing Brockman to liability. Under this theory, BFI's transfer of funds and distribution of assets to Brockman in dissolution constituted a fraudulent transfer under the Michigan Uniform Fraudulent Conveyance Act ("UFCA") and/or an invalid distribution under the Michigan Business Corporations Act ("BCA"). However, the Court finds that the evidence establishes Brockman's payments as loans, and therefore the distributions qualify as payments to a secured creditor.

The UFCA arms creditors with grounds for invalidating certain payments made by a financially troubled corporation. In re Peet Packing Co., 231 B.R. 42, 45 (Bankr. E.D. Mich. 1999). See MICH. COMP. LAWS § 566.14 ("Every conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors ... if the conveyance is made ... without a fair consideration"); MICH. COMP. LAWS § 566.16 ("Every conveyance made ... without fair consideration when the person making the conveyance ... intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to ... creditors"); see also MICH. COMP. LAWS §§ 566.19(1)(a) and 566.20(c) (giving creditors the power to "set aside" a fraudulent conveyance).

The BCA provides analogous protection for corporate creditors with respect to distributions. In re Peet, 231 B.R. at 46. That act states that "[a] distribution shall not be made

7

if, after giving it effect, the corporation would not be able to pay its debts as the debts become due ... or the corporation's total assets would be less that the sum of its total liabilities." MICH. COMP. LAWS § 450.1345(3). See also MICH. COMP. LAWS § 450.1855 ("Before making a distribution of assets to shareholders in dissolution, a corporation shall pay or make provision for its debts, obligations, and liabilities").

Both the BCA and the UFCA address the problem of payments made to the detriment of a corporation's creditors, with the BCA addressing distributions and the UFCA addressing transfers and conveyances. In re Peet, 231 B.R. at 45-46.

As a preliminary matter, Defendant's argument that all Plaintiff's tort claims relate to the breach of contract claim and therefore should be dismissed is not applicable to these claims. The duty being breached in fraudulent transfer and improper distribution is separate and distinct from the duty imposed on Defendants by the sales contract, and therefore it is not barred by Michigan's prohibition on contract-based torts. Brock, 817 F.2d at 25. In this case, the injury alleged by Plaintiff is not the nonpayment of money under the sales contract, but the transfer of money and assets preventing Plaintiff from recovering money from Defendant BFI as a creditor. Therefore, Plaintiff's claims of fraudulent transfer and improper distribution will not be dismissed along with Plaintiff's other tort claims for this reason, and the Court will examine the nature of the payments.

Both parties acknowledge that a transfer of money and a distribution of assets from BFI to Brockman occurred during the dissolution of BFI. Therefore, the dispositive question for the Court to consider is whether the payments by Brockman to BFI were *equity* contributions or *loans* to the business. "If a conveyance is made to satisfy an alleged antecedent debt which is

not shown to have existed, then fair consideration is lacking, under the [UFCA], and the conveyance may be set aside." Retirement Ben. Plan of Graphic Arts Intern. Union Local 20-B v. Standard Bindery, 654 F.Supp. 770, 774 (E.D. Mich. 1986) (citing MICH. COMP. LAWS § 566.19; Plymouth United Savings Bank v. Lee, 270 N.W. 781 (1936). Similarly, it is a violation of the BCA to distribute assets to shareholders during or after dissolution of the corporation "without paying, or adequately providing for all known debts, obligations, and liabilities of the corporation." Id. (citing MICH. COMP. LAWS § 450.1551). Therefore, if Brockman's contribution was equity (and not debt), Defendants would be in violation of the UFCA and the BCA.

The Sixth Circuit has laid out a test to determine if a capital contribution is debt or equity. It requires the Court to analyze the following factors: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. Roth Steel Tube Co. v. C.I.R., 800 F.2d 625, 630 (6th Cir. 1986).

Applying the Sixth Circuit's test to the evidence presented by the parties, the Court finds that:

9

(1) The payments by Brockman to BFI were formalized as a loan, with a security agreement and promissory note. This weighs in favor of debt.

(2) There is no maturity date given for the loan, and while monthly payments are contemplated, Defendant has presented no evidence that monthly payments were made. This weighs in favor of equity. See Lane v. United States, 742 F.2d 1311, 1316 (11th Cir.1984).

(3) The loan agreement specifies the payment of interest to Brockman on the loan at a rate of six percent. This weighs in favor of debt. See Stinnett's Pontiac Service v. Commissioner, 730 F.2d 634, 640 (11th Cir. 1984).

(4) There is no evidence that repayments were expected to be made out of BFI earnings or were dependent on BFI's success (which would be evidence of equity). This weighs slightly in favor of debt.

(5) Plaintiff and Defendant have presented competing evidence as to BFI's financial situation. The evidence shows that BFI was struggling as a business, but does not support a conclusion that BFI was undercapitalized. This weighs in favor of debt.

(6) When all the stockholders contribute money equally, it is evidence of equity. Roth Steel, 800 F.2d at 630. However, there is only one stockholder here, so the rule is inapplicable. This does not weigh on either side.

(7) Brockman and BFI eventually executed a security agreement to protect Brockman's contributions to BFI. This weighs in favor of debt.

(8) The contributions were made for the purpose of paying off debts that BFI could not repay on its own. It is unlikely that BFI could have obtained outside sources of credit on its own. This weighs in favor of equity. Estate of Mixon v. U.S., 464 F.2d 394, 410 (5th Cir. 1972).

(9) The contributions were not subordinated to other creditors, which would indicate equity. Instead, Brockman sought a security interest to prioritize his repayment. This weighs in favor of debt.

(10) The contributions were used to pay down prior loans and business expenses, rather than used on capital assets. This weighs in favor of debt.

(11) There is no evidence that BFI ever established any kind of sinking fund for the purposes of paying off Brockman's contribution. This weighs in favor of equity. Austin Village v. U.S., 432 F.2d 741, 745 (6th Cir. 1970).

Taken together, these factors indicate that Brockman's payments to BFI should be treated as loans rather than as equity contributions. Brockman formalized his payments as loans, executed a security agreement to protect them, and the available evidence demonstrates that he treated the payments as loans and that he intended to be repaid for his contributions. As such, the transfer of $145,000 from BFI to Brockman qualifies as repayment of a loan, rather than a fraudulent transfer under the UFCA; likewise, the distribution of $254,000 of assets from BFI to Brockman constitutes a repayment to a secured creditor instead of an improper distribution under the BCA. Summary judgment is therefore granted in favor of Defendants on these claims.

*4. Piercing the Corporate Veil*

A court may lift the corporate veil if it finds "'substantial reasons for doing so'" after weighing the following factors: "(1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators." Laborers' Pension Trust Fund v. Sydney Weinberger Homes, 872 F.2d 702, 704 (6th Cir. 1988) (citation omitted). In deciding whether to pierce the corporate veil, the court may also consider the following "nonexhaustive list of specific factors including undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities and finally, whether the corporation is a sham." In re Michigan Carpenters Council Health and Welfare Fund, 933 F.2d 376, 385 n. 6 (6th Cir. 1991) (citation omitted).

Plaintiff here attempts to pierce the corporate veil of BFI to reach Defendant Brockman, but fails to meet the necessary standards. In Weinberger, the Sixth Circuit found that there was substantial reason to lift the corporate veil because the sole shareholder had loaned money to the corporation with no formal agreements, paid corporation expenses out of his pocket, had the corporation pay his own expenses, withdrew money from the corporation before its dissolution before some creditors were paid, and generally failed to maintain adequate expense records. Weinberger, 872 F.2d at 704. Though Defendant Brockman transferred capital to BFI during a time of crisis and withdrew money during dissolution prior to creditors being paid, Plaintiff's case is weaker than that in Weinberger. There was a formal loan agreement between BFI and Brockman, there is no evidence that BFI paid Brockman's personal expenses or vice versa, and

(with the exception of the missing signed promissory note) there are adequate expense records documenting BFI's business. As the Sixth Circuit has explained, "intermingling of assets and the failure to maintain corporate records" are "the most important factors" in determining whether the corporate form was disregarded. N.L.R.B. v. Fullerton Transfer & Storage Ltd., 910 F.2d 331, 341 (6th Cir. 1990). There is no evidence that either of those has occurred here, and therefore the first factor is unlikely to be satisfied.

Furthermore, Plaintiff presents no evidence that Defendants intended to operate BFI fraudulently. Instead, the evidence presented shows that Brockman ran the corporation in a normal manner for a number of years. There is simply not enough evidence presented to support the claim that the corporation was a sham. For these reasons, the Plaintiff has not met the necessary burden to pierce the corporate veil, and summary judgment is granted for Defendants on this issue.

### 5. Wrongful Dissolution and Breach of Fiduciary Duty

Plaintiff has largely abandoned these remaining counts, and does not argue for them in either Plaintiff's Motion for Summary Judgment or Plaintiff's Response to Defendants' Motion for Summary Judgment. The Court finds that Plaintiff cannot maintain a claim for breach of fiduciary duty, as they have presented no evidence at all that either Defendant owed Plaintiff a fiduciary duty. Nor can Plaintiff maintain his claim for wrongful dissolution, as wrongful dissolution is a cause of action for aggrieved shareholders in a corporation (or partners in a partnership) who are injured by the dissolution of a going concern. As Plaintiff provides no

evidence or argument to support these claims, the Court grants summary judgment and dismisses these claims.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the Defendant's Motion for Partial Summary Judgment is **GRANTED** and the claims of conversion, silent fraud, unjust enrichment, wrongful dissolution, breach of fiduciary duty, fraudulent transfer, and improper distribution are **DISMISSED**. **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED** as to the breach of contract claim against Defendant BFI and **DENIED** as to the other claims.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: June 6, 2008

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK